Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. All right. Good afternoon, everyone. This is the last day of our December sitting. We have three cases on today's docket. The first one is Case 20-20225, T.O. v. Fort Bend ISD. We'll first hear from Mr. Craig. Good afternoon. May it please the court. My name is Timothy Craig. I'm an attorney for T.O., who is the appellant in this case. I'd first like to start by noting that I agree with Judge Wiener's concurrence in Moore v. Willis ISD, in which he states that it is time for us to reconsider the Fifth Circuit's opinion in Fee v. Herndon. That case has not stood the test of time and should be reconsidered. The only thing in Judge Wiener's opinion that I would disagree with is that subsequent developments in Supreme Court case law would now allow this panel to reconsider the fee opinion without it being heard on bonk or by the Supreme Court. The facts of this case are fairly straightforward. At the time of the incident that gave rise to this case, T.O. was a first grader at Fort Bend ISD. T.O. has disabilities. One characteristic of those disabilities is that he will on occasion act in a manner that is disruptive to his class. In response to his disabilities, Fort Bend ISD agreed to enter into a behavioral intervention plan that governed what the teachers were supposed to do whenever T.O. became disruptive. On January 31st of 2017, T.O. was removed from his class by a behavioral aide who was working with him to calm him down and enable him to return to the class. At that time, Abbot, who was not T.O.'s teacher, happened to be wandering by and decided to intervene. Ms. Abbott's intervention culminated in her throwing T.O. to the ground and choking him for several minutes while the behavioral aide protested until T.O. foamed at the mouth. How is that not corporal punishment? Well, we believe it may not be corporal punishment because there's evidence in the record that Ms. Abbott was not acting for pedagogical purpose. She was hurt after the fact, bragging that she had taken care of T.O. and that he had picked on the wrong one. This reflects more of a motivation of vengeance than a desire to do anything pedagogical. We would also contend that the act of choking a first grader is so severe that it can't possibly have any legitimate pedagogical purpose. This court, in the case of Doe v. Taylor ISD, which was an en banc opinion, found that sexual assault of a student couldn't serve any legitimate pedagogical purpose per se. We would contend that choking a student for several minutes would fit into that same category as well. However, whether or not... What should we consider? What factors, the surrounding circumstances, what should we consider when we're determining whether Ms. Abbott's conduct had a disciplinary purpose? What should go into that determination? Well, typically this court has simply looked at whether or not the incident occurred in a pedagogical setting, i.e. the school, which clearly was the case here, and also whether there was disruption. However, here, as I mentioned, there are additional factors, there are additional facts that have been alleged that provide additional insight into whether or not Ms. Abbott was acting for a pedagogical purpose. I'd also point to the 11th Circuit case of Neal, which was also bound by the same precedent that Fee relied on, where they looked at factors such as whether the school employee who committed the act, who committed the violence, was acting in compliance with the school's policy, whether that person had responsibility for the student. In this case, Ms. Abbott had no responsibility for teaching T.O. She wasn't his teacher, really had no connection with him, other than that she happened to be passing by in the hall. Additionally, as we say in our brief, if T.O. had to be disciplined, that discipline was governed by the Behavioral Intervention Plan, which set up the school's policy for how T.O. was to be treated. Despite knowing this, Angela Abbott just disregarded that and made up her own rules for how T.O. should be disciplined. These facts, we think, indicate that her purpose was not legitimately pedagogical, but rather an expression of her upset that T.O. was being coddled, being treated gently in accordance with the Behavioral Intervention Plan. Beyond whether or not, even if the court considers this a corporal discipline, we believe that this panel should overturn Fee v. Herndon. We believe that under subsequent Supreme Court case law, Fee v. Herndon can no longer be considered good law. If we were able to overturn Fee, how would that get you past qualified immunity, given that the law establishing liability needs to be clear at the time of the conduct? Okay, well, there are several things that should be noted here. I would first draw the court's attention to a recent Supreme Court case, Taylor v. Riojas, which is Supreme Court number 19-1261, in which the Supreme Court overturned a decision of the Fifth Circuit in an Eighth Amendment case. In that case, a prisoner had been put in a jail cell that was covered in feces, and the Fifth Circuit held that the law wasn't clearly established at the time that that violated his Eighth Amendment rights. The Supreme Court reversed that finding by the Fifth Circuit and found that the circumstances there were so egregious that the jailers in that case would have been non-noticed that putting a prisoner in a jail cell covered in feces violated his rights under the Eighth Amendment. Here we have similar egregious conduct of a teacher choking a student. No reasonable teacher would be under any apprehension that it is appropriate or legal to choke a student for several minutes, as was done here. Any reasonable teacher would know that choking a student for a long period of time until he foams at the mouth while behavior aid is screaming for you to stop would likely violate that student's rights. As in the Taylor case, that the circumstances here are sufficiently extreme that Angela Abbott would be on notice that her behavior likely violated the law. Additionally, I would point to Fee itself. I don't read Fee as saying that Angela Abbott's actions didn't violate TO's substantive due process rights. Instead, what Fee, I think, stands for is that he has to pursue those rights in a different forum. So if Fee's overruled, the only thing that would change is that the forum where the rights are pursued would change. That's not a change in what TO's substantive rights under the Substantive Due Process Clause are. And we've cited some clear precedent in our brief where, in the context of arrest and things of that nature, choking a detainee has been held to violate Fourth Amendment and Fourteenth Amendment rights. We think those cases, even though they're not in the context of a school, would have given Angela Abbott some notice that this behavior violated TO's rights. The primary Supreme Court case that we rely on here as bringing about a change in law is the Nick case. Nick was not a school case. It wasn't a substantive due process case. It was a Fifth Amendment takings case. But in that case, the Supreme Court used very broad language to explain why they were holding that the availability of state remedies in response to a taking didn't bar the plaintiffs from bringing their suit in federal court. Up to that point, the Supreme Court would require a challenge to a proposed taking to be brought in state court first. And the court also notes that they barred, if eventually the plaintiff ended up in federal court, they would be barred from challenging the findings of the state court. Effectively, that meant that takings could never be challenged in federal court. And the Supreme Court held that that was inappropriate. And in explaining their reasoning, they explained that just like in a Fourth Amendment case, the fact that a plaintiff could sue in court didn't bar them from suing under the Fourth Amendment in federal court. 1983 allows a plaintiff to pursue any substantive remedies in federal court, irrespective of whether there may be similar remedies available in a state court form. There are interests to be pursued that can only be pursued in federal court. To validate the constitutional rights that were violated goes beyond what can be pursued through a simple court action. There's an interest in having it declared that a person's rights under the Constitution were additionally violated here. We think that Nick provides this court with some basis, if it's inclined to do so, to revisit the fee case. And the fee case should clearly be revisited. The Fifth Circuit, as Judge Wiener has noted, is alone in the central holding of fee that the availability of state-created remedies bars bringing suit under the Substantive Process Clause here. Every other circuit has found that suits can be brought under the Substantive Due Process Clause in response to corporal punishment. They agree with the right case that corporal punishment implicates substantive due process. And the only question there is what standard applies. Here we believe that the Kingsley case, which was a pretrial detainee case, sets out the appropriate standard. We would also urge the court to adopt the objective reasonableness standard that Kingsley sets out for substantive due process claims. Finally, I'll just touch very, very briefly on the ADA claims. We think that the school districts brushing this matter under the rug, withholding crucial facts from their investigative reports, and taking no action to protect T.O. from further abuse by mishap that violates T.O.'s rights under the ADA. And with that, I thank the court. All right, you've saved time for rebuttal. We'll now hear from Mr. Gilbert for the defendants. Good afternoon, your honors. May it please the court. My name is Chris Gilbert, and I represent Fort Bend Independent School District and Angela Abbott in this matter. This is a student discipline case. I can't stress that enough because many of the cases that the appellants have cited, both in their brief and their argument, are cases that not only are not student discipline cases, they don't involve the public schools at all. And for good or for bad, the courts have routinely created legal doctrines that are different when public schools are involved. And as an example that's not directly relevant to this case, but it still proves the point, we know that probable cause is required for searches in the adult world. But the Supreme Court in New Jersey v. TLO held that in schools, you only require reasonable suspicion. And the reason for that is because of the increasing difficulty that schools have for maintaining order and discipline in the school setting, which the Supreme Court held in Ingram v. Wright is a prerequisite, a necessary prerequisite for education to actually occur. Here, we're dealing with what I'll call the Fee v. Herndon doctrine, although it frankly goes back much further through Cunningham v. Beaver, all the way back to this court and the Supreme Court's decisions in Ingram v. Wright. And I want to cite a passage or quote a passage from Fee because I think it answers most of the questions that came up in this case. In Fee, this court said, Our precedents dictate that injuries sustained incidentally to corporal punishment, irrespective of the severity of these injuries or the sensitivity of the student, do not implicate the due process clause if the forum state affords adequate post punishment, civil or criminal remedies for the student to vindicate legal transgressions. The rationale for this rule, quite simply, is that such states have provided all the process that is constitutionally due. Specifically, states that affirmatively prescribe and remedy mistreatment of students by educators do not, by definition, act arbitrarily, a necessary predicate for substantive due process relief. Mr. Gilbert, walk me through. What is the process in Texas if a student, the student's parent, thinks a teacher has engaged in excessive punishment? What's the process? Well, there are a number of things that a parent could do. I mean, obviously, they can file a grievance within the school district or something like that. But as as this court found repeatedly in Cunningham and Moore and Fee, state law provides the same that the. That the common law privilege provided, which is that teachers can act, can use reasonable force, but they can't use excessive force. So under Texas Education Code 22.0511, a teacher is entitled to immunity, but not if it's excessive, only if it's reasonable for same thing with Texas Penal Code 9.62, which is that the criminal side of it, an educator can use reasonable force, but they can't use excessive force. So there would be an avenue for remedy at the state court level. And that's what a lot of these cases are looking at. When you look at all these cases and you kind of look at the theme behind them, what they're saying is that we should not constitutionalize torts and what should be state tort actions. And so, you know, even this court in Doe versus Covington, which is a very different kind of case. But the whole idea there was we don't constitutionalize and federalize what should be state tort actions. So there is a remedy in this case at state law, as this court is repeatedly found in Texas. It's just at the state court level. And that's the point to fee and more. Are many of those cases brought in state court? I know you represent district. I'm just curious to those cases get brought. They do get brought. To be honest, I don't know why people seem to prefer federal court. So we seem to be in federal court more often than not. But, yes, they do get brought in state court. Did anything just within I don't mean there was a state lawsuit here, but was there anything within the school system that happened to Miss Abbott for this choking? She was investigated and she was required to undergo training. There is a physical restraint training that the law requires for special education, but it's only required for special education teachers. She is not a special ed teacher. But what the law says is if there is an incident that occurs, you then have a certain number of days. And I don't remember it's 30 or 60 or something, maybe 90, something like that for those people to undergo training. And she and the behavior aid and actually the principal of the school underwent that training. Now, this case has been framed somewhat both here and below as a qualified immunity case, and that's correct. But I think it's important to note that this is not a case where the defendants have leapfrogged the question of whether the challenge behavior actually violates the Constitution to move on to the easier question or the simpler question of whether there's any factually analogous precedent. In this case, as this court stated in Moore versus Willis ISD, under our precedent, the conduct of which they complain is not a constitutional violation. And the magistrate judge below said because plaintiff's amended complaint alleges excessive corporal punishment or unlawful seizures. And because Texas provides adequate post-punishment civil or criminal remedies for the student to vindicate legal transactions, plaintiff's claims are subject to dismissal under binding precedent. So this is one of those rare qualified immunity cases where the court actually did look at and resolve it on the first prong, whether the defendant committed a constitutional violation and not on the second prong of whether it was clearly established. Now, we have, throughout the briefs, argued that it was clearly established, but the point there was to really point out exactly what's already been discussed in this case, which is that even if this court were inclined to revisit fee at this point, that shouldn't change the outcome for Ms. Abbott. The substantive due process claim was only asserted against her. It was not asserted against the school district. And so even if you changed it, the law was obviously very clear at the time and has been for a long time. And therefore, her qualified immunity should not be lost, even if the court were to change fee versus Herndon. And while there have been calls at times for this court to relook at fee, including in Moore versus Willis ISD, Moore was 20 years ago now. And we have continued to have cases using this doctrine and applying it, even though there have been calls for it to be reevaluated. But you mentioned excessive force in an earlier context. Surely what Ms. Abbott did in choking a first grader until he passed out has to be excessive force. Well, with all due respect, Your Honor, there's no allegations that he passed out. Well, he was in some sort of situation. Well, obviously, this is a 12B6 case, so we're stuck with the facts as they will let them and plead them. And the evidence would say something different. But that aside, I don't think that that would constitute excessive force. Because if you go back and you look at you, I think you need to look at the entire force of action that Ms. Abbott engaged in and not cherry pick sort of the most egregious acts. The Supreme Court defined corporal punishment to be the force that a teacher reasonably believes to be necessary for a child's proper control training or education. That's what Mingum versus Wright. And in Flores, this court basically distinguished between pedagogical discipline and what the court called a random, malicious and unprovoked attack. So I think it's important in this case to look at the sum total of what was going on. You had a student who is Mr. removed from the classroom because he had been misbehaving in some form or fashion under his discipline plan. That was what it called for. And he was out in the hallway to cool down. He was not cooling down. He was acting still acting violent and aggressive and disruptive. And in the plaintiff's own words, at that point, Ms. Abbott chose to intervene to try to help handle the situation. But she initially actually passively got in front of the door to try to keep the student out of the classroom, which, again, is what the behavior intervention plan called for. And the student who was still misbehaving started hitting her. And at that point, she took him to the ground. And I think there's a factual dispute there about how much force was used and everything like that. But if she's choking him for a couple of minutes, a first grader, frankly, a 10th or 11th grader. I mean, how can choking for that length of time ever be reasonable? I mean, I get if there's really an altercation with the student grabbing their hands, you know, back, something like that. I mean, choking for that sustained amount of time is is reasonable. Well, then again, that's the facts that we're playing. That's where we're at. But I think if you look at the cases that this court has cited to say, well, what happened in those cases? And I would I would say that in those cases, the behavior of the teacher who was involved in the injuries to the student are worse than what happened here. And I guess we're talking about two different things. I'm not saying whether it falls within fee or not. I'm just saying stand back. Is this reasonable or not? I think we're talking about two different things. Well, so and I agree with that. I mean, I recognize the cases you're talking about. I've read them. Right. That would be a fact issue, I think, if if you were looking at the substance of the doctrine, you know, was the. And obviously, like I said, we're on a 12 v six. So we're using the facts that were played. If you go back and you look at the language that's in the fee cases, you know, again, a lot of the cases allege the same three behaviors was here. And in fee itself, you had a sixth grade student who was alleged to have been beaten so excessively that he ended up in a psychiatric rehabilitation hospital for months. In Campbell versus McAllister, you had an allegation that the police officer in that case removed a five year old from a classroom by slamming him to the floor and dragging him along the ground. In Moore versus Willis, the allegation was that the teacher, the coaches had deliberately used exercise to inflict pain on the student, which ended up in his hospitalization. And in Marquez versus Garnett, you had a student who was messing around with a teacher CD. The teacher cursed and yelled at the student, grabbed him from behind in a forceful and frightening manner, shoved him to the side and repeatedly kicked him. So I think, again, especially when you're looking at the doctrine, the behavior that is alleged to have occurred here is disciplinary. I think it's very much in line with everything that's happened in all of those cases. Now, the appellants have argued that fee can be implicitly overruled or abrogated because of two Supreme Court cases, Nick versus Township and Scott and Kingsley versus Henderson. And obviously, you know, we would disagree. First of all, those are not school cases. They're not student discipline cases. And Nick isn't even a due process case. And that's important because if you read the Nick opinion, the court in Nick said that the text of the constitutional amendment was critical to its analysis. The takings clause Nick is a takings case. The takings clause says nor shall private property be taken for public use without just compensation. And the Nick court said it doesn't say nor shall private property be taken for public use without an available procedure that will result in compensation. But that is what the due process clause says. It says nor shall any state deprive any person of life, liberty or property without due process of law. And that's the language that fee looked at in determining that in rejecting constitutional claims based on allegations of excessive force. Because unlike the takings clause at issue in Nick, the due process clause inherently looks at state law to determine, number one, what procedural process is due for a procedural due process claim and on the substantive due process side to look to see whether the state is acting arbitrarily. And that's what several of these cases have said in looking at the fee doctrine, is that if you have adequate post remedy law available at state law, the state is not acting arbitrarily. Even the Nick court distinguished what was going on in that case, the takings claim from the due process claim that was at issue in Carrick versus Taylor and said the analogy from the due process context to the taking context is strange. With respect to Kingsley versus Henderson. The argument that that should have placed Miss Abbott on notice that her conduct would be subject to an objective reasonable in this test. Because it was decided in 2017 right before this happened. Again, Kingsley is a very different case. It's a case involving claims of excessive force against a pretrial detainee in jail by police officers. And this is a student discipline teacher situation. But I think more importantly, it's very unclear why the appellants think that Kingsley was such a great and substantial change of law that it would require this case to reevaluate fee. The issue, the question of whether generally claims of excessive force are subject to an objective reasonable test was decided in Graham versus Connor in 1989 by the Supreme Court. So when this court was deciding fee in 1990 and certainly more in 2000, it was very aware that that is the general test that's generally used in these sorts of situations. So the court would have understood. We know what the general test is. But again, this is a student discipline situation and context matters. So in conclusion, we believe that fee was properly decided, that it's consistent with substantive due process jurisprudence, that that as that jurisprudence applies to student discipline cases, that it hasn't been overruled or abrogated by subsequent cases. And that in this case, it would properly serve to bar the substance of due process claim against Miss Abbott based on her use of force to restrain to. Now, I have a little bit of time left. I'm going to touch briefly on the discrimination claim and the leave to amend claim. We believe that the magistrate correctly concluded that the appellants didn't plead any facts that would show that the district discriminated against on the basis of his disability. And we know from the case law that in order to state a prima facie case of disability discrimination, you must show that the plaintiff was excluded from participation in or denied the benefits of a service on account of his disability. And in D.A. versus Houston ISD, this court said that Section 504 requires intentional discrimination against the student on the basis of his disability, but that neither the ADA or 504 creates a general court liability, which essentially is what they're pleading in this case. In a state of Lance, this court said that in a school context, you must plead facts that would show that the school refused to provide a reasonable accommodation for the handicapped plaintiff to receive the full benefits of the school program. Now, in this case, the district court determined that there were no facts pled that showed that T.O.'s disability played any role in anything that was being done to him. In particular, we know that T.O. was out in the hallway because of his behavior intervention plan. The plan specifically called for him to be taken out into the hallway to calm down. That was what he was, and that's what the district was doing at this time. And again, we think the facts show that Ms., as pled, show that Ms. Abbott intervened to try to help. She was trying to help a fellow teacher who she perceived, rightly or wrongly, who she perceived to be having trouble with a difficult student out in the hallway. So she went down to help, and like I said, she initially positioned herself in front of the door to keep the student out of the room. The student started hitting her, and that's when, obviously, things kind of started happening. But there's no allegation. I don't think there's even any pled facts that would show that this was because of his disability. They plead that she did this to take charge and handle the situation. That's paragraph 20 of the amended complaint. I don't think she was motivated by his disability, and anything else is a mere conclusion, mere legal conclusion masquerading as facts. Now, the plaintiffs do refer to Wilson v. City of Southlake to support their claim. I just want to address that real fast. Wilson is a very strange case to be trying to apply to this set of facts. Wilson was an 8-year-old who had significant autism who was emotionally abused by a police officer basically to try to teach the kid a lesson. The lower court in Wilson dismissed the case entirely, including the ADA and the Section 504 claims, entirely on an earlier case that had created an exigent circumstance test, an exception for police officers that said that they didn't need to inquire into the status of a disability if that would create a potentially life-threatening situation. And the Fifth Circuit in that case said, you had an 8th grader who was swinging a jump rope around. They kept talking about homemade nunchucks, and the Fifth Circuit said, no, it's a jump rope. Not only was it a jump rope, it was one the school district had given them. And so the court found that there was – that it didn't meet the standard for the exigent circumstance test, or at least that there was a fact issue there. And both the majority opinion and the concurring opinion in that case specifically said, we are not reaching anything other than that. We are not – they specifically did not get to the merits of the Section 504 of the ADA claim. So we don't know how that particular case is really all that instructive to this particular set of facts. And then lastly, leave to amend, we know that leave to amend is an abuse of discretion standard. We think when the defendants moved to dismiss in this case, the plaintiffs did not ask for permission to replay it. They relied on the pleadings. They waited months and months and months. It was seven months after the deadline to amend pleadings, and it was after the magistrate had already issued her recommendation. We've cited case law in our brief that says that's really improper. It's untimely when you wait that long. And we've also gone through in our brief and pointed out that most of what they wanted to add, they say that they learned about things, depositions that were taken in January of 2020, and there were three depositions that occurred. But most of what they wanted to add was not stuff they found during the deposition. It was things they knew about well before, including an entire section about how they believe that when the child started school a year and a half before this incident, they should have been faster in putting them on a 504 plan. They knew about that. They could have pled that initially, and they didn't. And we've gone through in our brief and highlighted that. So, in conclusion, we would ask that the court affirm the decision below, uphold the qualified immunity of Defendant Abbott and the dismissal of the claims against the school district. Thank you. Okay, we have your argument, and Mr. Craig, you get five minutes of rebuttal. And you need to unmute. Can you hear me now? Yes, go ahead. I'm sorry. No problem. I think in general, defendants' argument confuses procedural and substantive due process. When defendants look to fee and say for substantive due process purposes, you look to whether there are rights that can be vindicated through state law. No other court has validated that position. No other circuit has validated that position. And the Supreme Court in Zinnerman stated that a cause of action under substantive due process can be filed in court as soon as the action is completed. And that state law remedies are completely irrelevant to whether or not substantive due process rights have been violated. This court has recognized a right to bodily integrity since Doe v. Taylor. And that substantive due process right was violated by Defendant Abbott, and as soon as that action was complete, TO had the right to file in this court under the reasoning of Zinnerman. Defendants also point to the Behavioral Intervention Plan as apparently evidence of their compliance with the ADA. However, the Behavioral Intervention Plan is completely meaningless unless the school district enforces it. Here, they've allowed a teacher to completely disregard the Behavioral Intervention Plan by choking a student for several minutes. And they've taken no, apparently by their own admission, taken no disciplinary action in response. It's unclear why they think that is consistent with the ADA or with the intention of the law behind the Behavioral Intervention Plan. This case, it is easy to, I think, clearly demonstrates the problem with fee. It's easy to imagine this case going much more wrong than it did. It's easy to imagine that choking a student in first grade for several minutes could result in permanent injury and even death. But according to the logic put forward by the defendants, even in that case, had TO died from this incident, fee would still prohibit him from pursuing a substantive due process claim in this court. That just simply cannot be. They also don't even attempt to explain why this is the lone area, the lone context where constitutional rights couldn't be pursued by TO. If this had happened anywhere else, if it had happened at a public library where a state employee had tackled him and choked him in the public library, it's clear he'd be able to pursue his constitutional rights under either the 4th or the 14th Amendment there. Even if this had happened in prison, he wouldn't be barred from pursuing a claim under the 8th Amendment. What fee does is it absolutely shuts the door in his face and prohibits him from pursuing obvious violations of his substantive due process rights. As I've said, no teacher could think that it was reasonable to tackle a first grade student, a fifth her size, throw him to the ground and lean on his neck for several minutes. There needs to be some point at which constitutional protections kick in, irrespective of whether there may be ways to get some relief through state court. And we would contend that this is a case that goes over whatever that line is, whether the test is that the one articulated in fee, that the action was arbitrary, whereas has been articulated by some of the other circuits, that it's something that shocks the conscience. Or if the test is objective reasonableness, as was articulated by Kingsley, the actions here would violate Tio's rights under any test imaginable. And we would ask the court to reverse and remand for further proceedings. All right. Thanks to both sides for the helpful argument. The case is submitted. You all can exit the Zoom.